IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUDY DELATORRE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.   04 CV 3591 |
| ) | Judge Blanche M. Manning |
| MINNESOTA LIFE, a Minnesota ) | |
| Mutual Company, ) | |
| ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

On April 22, 2004, plaintiff Judy DeLaTorre filed a complaint against Minnesota Life Insurance Co. ("defendant"), the issuer of an accidental death insurance policy for her and her deceased husband, Sergio DeLaTorre ("DeLaTorre"), alleging breach of contract for failure to pay insurance benefits. Before the court is defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the court grants defendant's motion.

I. BACKGROUND

On or about April 20, 2000, defendant issued a certificate for accidental death coverage ("the Policy") to Sergio DeLaTorre and plaintiff Judy DeLaTorre. The relevant Policy language provides:

> Death by accidental injury as used in this certificate means that your death results, directly and independently . . . from an accidental injury which was unintended, unexpected, and unforeseen . . . . In no event will we pay the accidental death benefit if your death results from or is caused directly by

1

any of the following: . . . (2) your commission of a felony.

On May 19, 2003, DeLaTorre died from injuries sustained when the automobile he was driving collided head on with a light post. The medical examiner's death certificate indicates the cause of death was multiple injuries as a result of an automobile accident.

On or about June 2, 2003, plaintiff submitted a claim for accidental death benefits. In response, the defendant requested and received DeLaTorre's driving record, which showed that DeLaTorre had been convicted of driving under the influence on October 7, 1991, May 23, 1993, May 26, 2002, and charged with driving under the influence on April 29, 2003. Moreover, his driver's license had been revoked on three occasions. The defendant also requested and received a toxicology analysis[1] performed by the Office of the Medical Examiner, Cook County, Illinois, which indicated that, at the time of his death, DeLaTorre's blood was positive for alcohol at .23mg/dl and for morphine at .293mg/dl.

Dr. Tae Lyong An is a pathologist and the Assistant Medical Examiner for Cook County. Dr. An's duties include examining bodies and determining the cause and manner of death. Dr. An has no training as an accident reconstructionist or engineer, nor is he a toxicologist. In his role as a pathologist, however, Dr. An testified during his deposition for the instant case that the effects of a blood alcohol level of .23mg/dl, as is DeLaTorre's case, include impaired judgment, impaired visual acuity and delayed reaction time, and that a morphine level of .293mg/dl can cause impaired judgment and muscular coordination, dizziness, drowsiness, hypotension, respiratory compression, coma, and death. Dr. An further testified that the cause of the accident

---

[1] Plaintiff disputes the admissibility of the toxicology analysis and the testimony of Dr. An, described *infra*. A detailed discussion of its admissibility is found in the analysis section.

was alcohol and morphine intoxication.

Regarding the toxicology report, Dr. An testified that toxicology reports can take a few weeks to be completed. Dr. An testified that he believed that all policies and procedures were followed in the completion of the toxicology report, and that the toxicology report was a true and accurate report of the blood and urine samples taken from DeLaTorre. Moreover, he stated that he had no reason to believe that the analysis had not been properly conducted.

After receiving DeLaTorre's driving history and a copy of the toxicology report, the defendant denied benefits, stating that DeLaTorre's death was foreseeable and thus failed to satisfy the Policy's definition of an accident. Furthermore, the defendant denied coverage on the basis that both DeLaTorre's toxicology report and driving record evidenced the commission of a felony and thereby voided the defendant's contractual obligation to pay benefits.

Although the court finds that under Illinois law, DeLaTorre's death would not be considered foreseeable, the court concludes that the death resulted from or was directly caused by a felony. Accordingly, because the court finds that the felony exclusion applies, defendant's motion for summary judgment is granted.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of

establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The existence of a factual dispute is not sufficient to defeat a summary judgment motion, instead the non-moving party must present definite, competent evidence to rebut the movant's asserted facts. *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004).

## III. ANALYSIS

### A. Foreseeable and Accidental

The defendant first argues that accidental death benefits are not payable because DeLaTorre's death was foreseeable and therefore not an accident. As to whether the death was accidental, Illinois maintains a liberal attitude in its interpretation of "accident" as it pertains to insurance policies. Specifically, the Illinois Supreme Court has stated that accidental means is synonymous with accidental result and has defined an accident as "something which happens by chance or fortuitously, without intention or design, and which is unexpected, unusual and unforeseen." *Taylor v. John Hancock Mutual Life Ins. Co.*, 142 N.E.2d 5, 6 (Ill. 1957) (holding arsonist's death in fire an accident for insurance purposes since arsonist did not intend fire to start when it did); *see also Lyons v. State Farm Fire and Casualty Co.*, 811 N.E.2d 718 (Ill. App. Ct. 2004) ("If an act is performed with the intention of accomplishing a certain result, and . . . another result, unintended and unexpected occurs, . . . such unintended result is deemed to be caused by accidental means."); *Russell v. Metro. Life Ins. Co.*, 439 N.E.2d 89, 91 (Ill. App. Ct. 1982); *Arnold v. Metro. Life Ins. Co.*, 970 F.2d 360, 362 (7th Cir. 1992).

Thus, under Illinois law, an injury may be an accident only when it is unintended. Because DeLaTorre died as a result of injuries incurred after an automobile accident, and neither

4

party alleges that DeLaTorre intended the accident or his injuries, DeLaTorre's death is properly characterized as an accident under Illinois law.

The defendant argues that DeLaTorre's death cannot be an accident because he intentionally used dangerous amounts of alcohol and morphine. However, under Illinois law, a death can be accidental even though the means of destruction is intentional. *Marsh v. Metropolitan Life Ins. Co.*, 388 N.E.2d 1121, 1123 (Ill. App. Ct. 1979) (holding an insured's unintentional death by heroin overdose, as it pertained to his insurance policy, an accident as a matter of law because although the means of his destruction, the injection of heroin, was intentional, the resultant death therefrom was unintentional and therefore accidental).

In the instant case, although DeLaTorre used large quantities of alcohol and morphine, there is no indication, nor does the defendant assert, that DeLaTorre intended the resulting death. Absent evidence of such intent, his death remains an accident. *Id.* at 1125; *See also Russell*, 439 N.E.2d at 90-91; *Harrington v. New England Mut. Life Ins. Co.*, 873 F.2d 166, 169 (7th Cir. 1989) ("[T]here is no evidence that he intended to kill himself as a result of his actions, and therefore his death was accidental. . . .").

Similarly, the defendant contends that, because DeLaTorre was driving under the influence of high amounts of alcohol and morphine, an automobile accident, and the subsequent death from resulting injuries, are entirely foreseeable. However, Illinois courts maintain a high standard for foreseeability in insurance cases--a standard significantly greater than the corresponding standards for criminal or negligence cases. *Marsh*, 388 N.E.2d at 1123 ("[N]either the level of foreseeability requisite for tort liability nor the level requisite for criminal recklessness is sufficient to render a mishap a 'nonaccident' when conduct is measured against

5

the terms of insurance coverage for accidental injury.").

Under *Marsh*, the test for foreseeability is "a contingency known to all sensible men as likely to follow as a natural result of one's conduct" or, restated, "a contingency which any man with ordinary intelligence and prudence . . . could have reasonably foreseen." *Id.* At least one Illinois court interpreting this standard has found an alcoholic's death unforeseeable despite his having been found dead, lying next to a bottle of vodka, with a lethal blood alcohol level. *Russell v. Metropolitan Life Ins. Co*, 439 N.E.2d 89, 93 (Ill. App. Ct. 1982). In *Russell*, the court stated that "we can only conclude that where, as here, the death was no more to be anticipated than in *Taylor*, . . . the death was unforeseeable as a matter of law." *Id.*[2]

Accordingly, under this liberal standard, the court concludes that DeLaTorre's death was also unforeseeable. If, under Illinois law, an alcoholic's death from the overingestion of alcohol is not foreseeable, then the more attenuated circumstances here (i.e., death from an automobile accident rather than from his intended use of alcohol and morphine) also do not satisfy the test for foreseeability. In other words, applying the standard articulated in *Russell*, the court finds in this case that DeLaTorre's death resulting from an automobile accident while under the influence of alcohol and morphine was not any more anticipated than the death in *Taylor*.

The court notes that the defendant relies almost totally on federal common law under the Employee Retirement Income Security Act of 1974 ("ERISA"), 28 U.S.C. § 1001 *et seq.*, and non-Illinois law in support of its arguments that the accident was foreseeable and not an

---

[2] The *Russell* court also noted that in Illinois, "the test of foreseeability in the interpretation of insurance policies differs from that in tort or criminal law." *Russell*, 439 N.E.2d at 92.

accident.³ However, the defendant removed this action based on diversity of citizenship between the parties under 28 U.S.C. § 1332. In a diversity case, the court generally will apply the substantive law of the state in which it sits, which in this case is Illinois. *Schmitz v. Campbell-Mithun, Inc.*, 124 F.R.D. 189, 192 (N.D. Ill. 1989) ("[I]n diversity cases, except in matters governed by the federal constitution or by acts of congress, the law to be applied is the law of the state."). Defendant does not assert that the Policy is governed by ERISA.⁴ Accordingly, the

---

³*Gaddy v. Hartford Life Ins. Co.*, 218 F. Supp. 2d 1123, 1127 (E.D. Mo. 2002) ("The parties agree that Missouri law governs this case."); *Sorrells v. Sun Life Assur. Co. of Canada*, 85 F. Supp. 2d 1221, 1223 (S.D. Ala. 2000) ("The primary issue in this case is whether plaintiff is entitled to accidental death benefits under an employee welfare benefit plan covered by [ERISA]."); *Schultz v. Metropolitan Life Ins. Co.* 994 F.Supp. 1419, 1419 (M.D. Fla. 1997)("This case involves a disputed claim for accidental death and dismemberment benefits . . . as defined and governed by [ERISA]."); *Miller v. Auto-Alliance Int'l, Inc.*, 953 F.Supp. 172 (E.D. Mich. 1997) ("[T]his action arises under and is controlled by ERISA."); *Fowler v. Metropolitan Life Ins. Co.*, 938 F.Supp. 476, 477 (W.D. Tenn. 1996) ("[T]he action was removed . . . on the grounds that the cause of action arose under . . . ERISA."); *Cates v. Metropolitan Life Ins. Co., Inc.* 14 F.Supp.2d 1024, 1027 (E.D. Tenn. 1996) ("The case before the Court is an ERISA case."); *Smith v. Life Ins. Co. of North America*, 872 F. Supp. 482, 483-484 (W.D. Tenn. 1994) (applying TN law); *McLain v. Metropolitan Life Ins. Co.*, 820 F. Supp. 169, 170 (D. NJ. 1993) ("This is an action . . . to recover[ ] . . . 'Accidental Death and Dismemberment' benefits under . . . ERISA."). *Wickman v. Northwestern Nat. Ins. Co.*, 908 F.2d 1077, 1083 (1ˢᵗ Cir. 1990) ("Thus, the group accident insurance formed a considered employer plan under ERISA. . . . .") *See also Cozzie v. Metropolitan Life Ins. Co.*, 140 F.3d 1104, 1106 (7th Cir. 1998) ("MetLife removed the action to the district court on the ground that the insurance plan is governed by the provisions of [ERISA]."). The only citation to Illinois law in *Cozzie* is to *Arnold v. Metro. Life Ins. Co.*, 970 F.2d 360 (7th Cir. 1992), in which the Seventh Circuit specifically noted that "[c]ases involving 'Russian Roulette' are not analogous [to other deaths from consciously incurring known hazards] in terms of the level of foreseeability." *Arnold*, 970 F.2d at 362.

⁴According to plaintiff, the Policy is a policy of mortgage insurance not subject to ERISA standards. An ERISA-governed insurance plan has five elements: (1) a plan, fund, or program, (2) established or maintained, (3) by an employer or by an employee organization, or by both (4) for the purpose of providing accident benefits, (5) to participants or their beneficiaries. *Ed Miniat v. Globe Life Ins Group, Inc.*, 805 F.2d 732, 738 (7th Cir. 1986) (*citing Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982)). The defendant has not made any attempt to demonstrate that the insurance policy at issue is an ERISA-governed policy.

court has applied Illinois law.

## B. Caused by the Commission of a Felony

The Policy states that benefits will not be paid if "death results from or is caused by . . . [the insured's] commission of a felony." Relying on Dr. An, the pathologist who examined DeLaTorre's body, and a toxicology report, the defendant contends that DeLaTorre's driving under the influence of alcohol constituted a felony, thus voiding any obligation to pay benefits. Plaintiff does not challenge the defendant's position that DeLaTorre's driving under the influence in this circumstance would constitute a felony. Rather, the plaintiff challenges the admissibility of the toxicology report and the testimony of Dr. An.

Before addressing these arguments, the court notes that the plaintiff's arguments regarding the admissibility of the evidence are difficult to decipher, which is due in part to the fact that she has cited to virtually no authority in support of her arguments other than a passing reference to the Federal Rules of Evidence. It is not this court's role to make parties' arguments for them and the plaintiff's complete failure to offer support for her arguments provides a ground for finding that the plaintiff has waived these arguments. *Volvosek v. Wisconsin Dep't of Agr. Trade & Consumer Prot.*, 344 F.3d 680, 689 n. 6 (7th Cir. 2003) (complete absence of legal argument waives consideration of claim). However, in the interests of providing a ruling on the merits, the court will address her arguments as it has construed them to the best of its ability.

The plaintiff first argues that the defendant has not provided a foundation for the admission of the toxicology report given that defendant has not shown a chain of custody with respect to the blood sample taken from DeLaTorre. Fed. R. Evid. 901(a) states that "[t]he requirement of authentication or identification as a condition precedent to admissibility is

8

satisfied by evidence sufficient to support a finding that the matter in question is what its proponents claim."[5] Under Rule 901(b)(1), a party may authenticate a matter through the testimony of a witness who has knowledge that the matter is what its proponents claim it to be. "In proving a chain of custody, the proponent of an item of evidence shows that it was continuously in the safekeeping of one or more specific persons. . . . " Wright and Gold, Federal Practice and Procedure, Evidence § 7106 at 49 (West 2000). "It is usually unnecessary to establish a perfect or unbroken chain of custody." *Id.* at 51. Rule 901(a)'s standard of "sufficient to support a finding" is a minimal one and thus "courts commonly tolerate gaps in the chain that might present some limited opportunity for tampering with the evidence." *Id.*

In the instant case, Dr. An, a Cook County assistant medical examiner, testified that he is board certified in pathology and forensic pathology. Dr. An testified that DeLaTorre died on May 19, 2003, and that he took a blood and urine sample from the decedent on May 20, 2003, during the postmortem examination of DeLaTorre. According to Dr. An, he took the samples, labeled them in specimen jars, and put them on a tray. Dr. An then testified that a technician "would put it in the dumbwaiter that goes directly to the toxicology [lab] and they check every bottle and request report." Dr. An further testified that he had no reason to believe that: (1) there was a misfiling or mislabeling of the blood sample; or (2) the toxicology report upon which defendant relies is not a true and accurate report of the blood and urine samples that he extracted on May 20, 2003.

While plaintiff challenges the chain of custody, based in part on the fact that the test was

---

[5]The court notes that plaintiff did not cite to Rule 901 in making her chain of custody argument. However, given that the plaintiff appears to be challenging that the blood sample is authentic and/or reliable, the court analyzes this argument under Rule 901.

not performed until 7 weeks after the blood was drawn, she fails to point to any evidence sufficient to create a genuine issue of material fact that the blood sample on which the report is based is not DeLaTorre's. Accordingly, the court finds this evidence meets the minimal standard under Rule 901 that the toxicology report is authentic, i.e., that it is based on DeLaTorre's blood sample. *Cooper v. Eagle River Mem'l Hosp., Inc.*, 270 F.3d 456, 463 (7th Cir. 2001) (an uninterrupted chain of custody is not a prerequisite to admissibility).

Plaintiff also argues that the report is hearsay. However, Fed. R. Evid. 803(8)(C) creates an exception to the inadmissibility of hearsay for factual findings from an investigation made pursuant to authority granted by law, unless the sources of information lack trustworthiness. Fed. R. Evid. 803(8)(C). Dr. An testified that the toxicology report was prepared as part of the Cook County medical examiner's investigation and therefore qualifies for admission under the public records exception within Fed. R. Evid. 803(8)(C), provided that it meet the requisite standard for trustworthiness.

Courts look to four possible criteria to evaluate the trustworthiness of proffered evidence: "the timeliness of the investigation, the special skill or experience of the official, whether a hearing was held, and possible motivational problems." *Klein v. Vanek*, 86 F. Supp.2d 812, 820 (N.D. Ill. 2000) (*citing Miller v. Field*, 35 F.3d 1088, 1090 (6th Cir. 1994)). Plaintiff has the burden of showing that the report is untrustworthy. *Id.*

As to the timeliness, the court has concluded that the toxicology report fulfills the requirement for authenticity despite the time lag in producing the report. Dr. An testified that to his knowledge the blood test was performed by the toxicology lab in the Cook County medical examiner's office and plaintiff has pointed to no evidence rebutting this assertion or that there

was any concern as to the laboratory's motivation. Indeed, the plaintiff has pointed to no evidence at all in support of her claim that the report is untrustworthy and thus has failed to meet her burden. Accordingly, the court finds that the toxicology report is admissible under Fed. R. Evid. 803(8)(C).

The plaintiff also challenges the testimony by Dr. An under Fed. R. Evid. 702. Specifically, the plaintiff contends that because Dr. An "has no training in accident reconstruction nor does he have any engineering background," that his opinion fails to meet the requirements of Rule 702. The plaintiff also claims that "there is no showing [Dr. An's] testimony is based on sufficient data or that it is the product of reliable methods when he has no knowledge as to how the toxicology test was performed." The court notes that the plaintiff does not even bother to state what the "requirements of Rule 702" are or cite to any authority in support of this argument.

Rule 702 allows for an individual to testify as an expert provided that the person: (1) is qualified as an expert; (2) provides testimony that will assist the jury; and (3) relies on evidence on which a reasonable expert in the field would rely. The Court has broad latitude to decide how to determine reliability. *Kumho Tire Company, Limited v. Carmichael*, 526 U.S. 137, 141-42 (1999).

As to the first prong, Dr. An's qualifications are as follows: he graduated from medical school in Korea in 1962 and was in the Korean Army for four years as a medical officer; upon coming to Chicago, he had a one-year internship at St. Joseph Hospital in Chicago; he spent four years training as a pathologist at Cook County Hospital in forensic pathology; he has been employed as an assistant medical examiner in Cook County since 1973 (over 30 years'

11

experience); and he is board certified in pathology and forensic pathology. The court finds that based on this evidence, Dr. An is qualified to testify based on his medical knowledge of the effects of alcohol and morphine on the human body.

Further, the court finds that Dr. An's testimony could assist a trier of fact regarding the cause of the accident. Finally, in reaching his conclusion that DeLaTorre's death was caused by his intoxication, Dr. An relied upon the toxicology report, which this court has held to be admissible and which reliance was entirely reasonable under the circumstances. Ultimately, "it is the Court's task to ensure that expert testimony is both reliable and relevant." *U.S. v. Caputo*, No. 03-CR-0126, 2005 WL 1503423, at *5 (N.D. Ill. June 16, 2005) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)). Based on its analysis of the Rule 702 requirements, the court concludes that Dr. An's testimony is both reliable and relevant.

The plaintiff's rather convoluted final argument is also unavailing. Pared down, the plaintiff's argument appears to be that somehow the policy is ambiguous because DeLaTorre's death did not result from intoxication, but rather from multiple and severe injuries. In support, the plaintiff relies on Dr. An's postmortem results which conclude that DeLaTorre's death was related to multiple injuries which occurred in the automobile accident. However, Dr. An testified that the cause of the *accident* was alcohol and morphine intoxication. Thus, as discussed below, the accident resulted from or was caused directly by the commission of a felony, and DeLaTorre died as a result of the accident. The plaintiff's attempt to create ambiguity where none exists is not well-taken.

The court comes, then, to the defendant's contention that DeLaTorre's death resulted from or was caused by a felony. Pursuant to the Illinois Vehicle Code ("Code"), a "person shall

not drive or be in actual physical control of any vehicle within this State" while the alcohol concentration in one's blood is 0.08 grams of alcohol per 100 milliliters (mg/dl) of blood. 625 ILCS 5/11-501(a)(1) (West 2002). The toxicology report reveals that DeLaTorre's blood-alcohol level at his death was .23mg/dl, nearly three times the legal limit. Thus, DeLaTorre was driving under the influence, which in and of itself is a misdemeanor. 625 ILCS 5/11-501(c) (2002).

The defendant contends that DeLaTorre's driving record indicates that he was convicted of driving under the influence of alcohol three times within a period of less then twenty years. This fact is undisputed. The defendant goes on to point out that "anyone who is convicted of driving under the influence of alcohol three times within twenty years is guilty of a class 4 felony" citing to 625 ILCS 5/11-501(c-4)(3) (2002).[6]

As discussed above, the court has already concluded that the toxicology report and Dr. An's testimony that the cause of the accident was due to DeLaTorre's intoxication are admissible evidence. Further, the plaintiff has failed to create a genuine issue of material fact that

---

[6]It is undisputed that DeLaTorre was arrested a fourth time for driving under the influence on April 29, 2003 and a statutory summary suspension from this fourth arrest was scheduled to take effect on June 14, 2003. The accident that killed DeLaTorre occurred on May 19, 2003, approximately one month before the scheduled suspension was to take effect. Thus, given that DeLaTorre had been already been convicted three times and had been arrested a fourth time (though the record does not state he was convicted this fourth time) before the May 19, 2003, accident occurred, the section of the Code dealing with three convictions does not appear to be applicable – rather, the focus would seem to be on a fourth or subsequent conviction. *See* 625 ILCS 5/11-501(c-4)(4) (2002). However, the plaintiff has not raised the issue and it does not change the outcome. The court further notes that DeLaTorre would be guilty of a felony under 625 ILCS 5/11-501 (d)(1)(A) (2002) ("Every person convicted of committing a violation of this Section shall be guilty of aggravated driving under the influence of alcohol, other drug or drugs, or intoxicating compund or compounds, . . . if: (A) the person committed a violation of this Section, . . . , for the third or subsequent time") in conjunction with 625 ILCS 5/11-501(d)(2) (2002) ("Aggravated driving under the influence of alcohol, other drug or drugs, or intoxicating compound or compounds, or any combination thereof is a Class 4 felony.")

DeLaTorre's death was *not* the result of the intoxication. The court concludes that a trier of fact could find that DeLaTorre's death, his having been driving under the influence at least the third time within a period of less then twenty years, resulted from or was caused by the commission of a felony.

## IV. CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is granted.

**ENTER:**

DATE: SEP *16* 2005

Blanche M. Manning
**United States District Judge**